The bill filed herein seeks a construction of the will of John Glunz, who died on or about April 7th, 1931. The complainant is the executor and trustee under the will. The testator devised and bequeathed to his wife, Magdalena Glunz, one of the defendants, the premises No. 508 Chestnut street, Westfield, New Jersey, with the personal effects therein contained. There were also specific legacies bequeathed which aggregate $42,990, among which was one to the decedent's wife for $15,000. Paragraph 13 of the will gives the executors and trustees "all the rest, residue and remainder of the estate" subject to the following trusts:
"They shall pay the income thereof to my said wife, Magdalena Glunz, for and during the period of her natural life, in quarter annual payments, beginning six months after my decease, if possible, and they shall also pay any and all necessary and extraordinary hospital bills and medical bills, that they may deem proper, that may be incurred by my said wife during her lifetime. The amount paid for said bills shall be questioned by no one."
Paragraph 16 of the will provides that the bequests to Magdalena Glunz, the decedent's wife, were made in lieu of dower. Paragraph 17 of the will reads as follows:
"17. I hereby nominate and appoint The Trust Company of New Jersey (of Jersey City) and my friend George Scheetz, Jr., executors and trustees of this My Last Will and Testament and I do order they shall not be required to furnish any bond as executor or trustee of my estate. I do give unto my said executors and trustees full power to sell any and all real estate I may possess except the property at 508 Chestnut St., Westfield, N.J., at such times and upon such terms as they may deem best for the interest of my estate and to give good and sufficient deeds of conveyance therefore. In the event that there is not sufficient moneys to pay the bequests herein named, my said executors and trustees shall dispose of my real estate, but not for a period of three years after my decease, if they deem it *Page 75 
necessary and proper, and the payment of said bequests herein shall in that event be not be payable until six months after the sale of my said real estate. My said executors and trustees shall have power to do any and everything in the management and disposal of my estate as if I could do, if I was living."
None of the legacies, nor any part thereof, have been paid. The complainant, at the end of six months after the death of the testator, paid to the testator's wife the sum of $100 per month out of the income of the estate, and continued monthly thereafter to pay similar amounts until the filing of the bill herein, when the payments ceased. The income from the properties is more than sufficient to pay the carrying charges, and the monthly income to the widow. The bill seeks (1) a declaration and determination of the rights and interests of the defendants under the will; (2) approval of the monthly payments of $100 made to Magdalena Glunz, and instructions as to future payments to her; (3) whether the real estate should be sold, or held, "until the termination of the economic depression now existing," and (4) instructions as to the future administration of the estate.
The defendant Magdalena Glunz is of the age of sixty-three years, without resources of her own, and unable to maintain and support herself. She is dependent upon the bequests mentioned in the will of her deceased husband. The testator left no other dependents.
The estate consists of: $4,600 in mortgage certificates, $2,500 in income account and $2,100 in capital account; seventy shares of Dunn-Penn Company of no value; five shares Public Service Corporation five per cent. preferred; a vacant lot at 728 Belvidere avenue, Westfield, New Jersey; a one-half interest in a lot known by the street number 717 Oak street. Westfield. New Jersey; a one-half interest in a rear one-half of a lot at 318 Oak street, Westfield, New Jersey; one parcel of real property in Jersey City, New Jersey, known as 431-33 Jackson avenue and 316 Forrest street; and a tenement house at 318 Forrest street, Jersey City, New Jersey: cash in bank $2,615.43. The total inventoried value of the estate, real and personal, is $62,824.76. There is not sufficient personalty to pay the legacies mentioned. The complainant, *Page 76 
after many endeavors, has been unable to dispose of the real estate. It has inquired frequently of realty dealers, and made diligent effort to dispose of the realty, but without success. It claims that the existing financial distress and economic depression has made it impossible to find any market for the realty; that there is no existing demand for property of the type it holds; and that to presently carry out the provisions of the will, the sale of the realty would necessarily have to be upon a cash basis, and due to the depression, such purchasers are few and practically non-existent. It also takes the attitude that it would practically be a useless expenditure of effort for a prospective purchaser to attempt to raise funds through financial institutions, because such institutions are not in these days readily advancing moneys upon real estate security. The complainant is a trust company; its representative, Robert J. Adams, who is a trust officer and assistant vice-president, testified at the hearing. In the course of his examination, he was asked about the probability of a prospective purchaser of decedent's real estate obtaining a loan to be applied on account of the purchase price, and he said: "I would say as far as banks and insurance companies are concerned there is no chance whatever. The buildings are old and the existing processes of such banks that are making loans, are making small loans on an amortized basis. These loans are entirely too small to be of any value in this proposition." The same witness testified that the realty has been carrying itself since the death of the testator.
It was conceded by counsel for the complainant and the defendants that it would be inadvisable to sell, or offer the property for sale at the present time because of the weakness of the realty market. I am satisfied that their judgment, and the witnesses who testified to the same effect, is sound. The time is not opportune for a sale; and it would not be to the advantage of the estate to dispose of the property now. In my opinion, if it were, to-day, put up for sale, it would have to be sacrificed, and it would not bring anything near its fair value.
I believe that the legacies are a charge upon the realty; but it is not my belief that the charges are prior to the residuary *Page 77 
bequest mentioned in the thirteenth paragraph of the will. A perusal of the will indicates that it was the intention of the testator to provide first for the care of his wife above all other considerations. She naturally was his chief concern; she was entirely dependent upon him. To my mind, it is not unreasonable to assume that the testator could not have foreseen or have anticipated the economic situation that has arisen since he executed his testament. If he had anticipated the existence of these present day conditions, could it be doubted, he would have made provision for the protection of his wife to the exclusion of the other legatees? I do not think so. I take it that it was his foremost desire to make his wife as financially secure as possible. That thought, undoubtedly, was uppermost in his mind and the provision in the thirteenth paragraph of the will sustains that conclusion. Higgins v. Mispeth, 118 N.J. Eq. 575.
Vice-Chancellor Backes, in Johnson v. Haldane, 95 N.J. Eq. 404,
said:
"In construing a will the predominant idea of the testator's mind, if apparent, is heeded as against all doubtful and conflicting provisions which might of themselves defeat it.Schoul. Wil. § 476; Carter v. Gray, 58 N.J. Eq. 411;Burroughs v. Jamieson, 62 N.J. Eq. 651."
The court of chancery, in the exercise of its general administrative jurisdiction, in cases of trusts, in an emergency, may direct trustees to depart from the strict letter of their guiding instrument, the consequences of whose terms, it may reasonably be inferred, were not foreseen or anticipated by its author, and pursue a course or policy different than that expressed in the creative article, in order to effect the purpose which he had in mind at the time of the institution of the trust.New Jersey National Bank and Trust Co. v. Lincoln Mortgage andTitle Guaranty Co., 105 N.J. Eq. 557; Price v. Long, 87 N.J. Eq. 578.
It is conceded, that ordinarily a trustee in the administration of the trust, is bound by the terms of the trust, and that this court has no power to direct the trustee to depart from the mandate expressed in the instrument of its creation; but it is likewise true that a court of equity may, in cases of *Page 78 
emergency for the preservation of the trust estate and the protection and benefit of the cestuis que trustent, authorize and direct the trustee to do acts which under the terms of the trust, and under ordinary circumstances, they would have no power to do. New Jersey National Bank and Trust Co. v. LincolnMortgage and Title Guaranty Co., supra.
In Pennington v. Metropolitan Museum of Art, 65 N.J. Eq. 11,
the court said:
"That in an emergency which had not been considered by the creator of the trust, and which, if anticipated, would have been provided for, a court of equity might take the place of the creator of the trust and do what he would have done. This power was placed upon the ground of a necessity to carry out the intent of the trust when by unforseen circumstances it was not answering the purpose of its creation."
In Gavin v. Curtin, 171 Ill. 640; 40 L.R.A. 776, it is said:
"Exigencies often arise not contemplated by the party creating the trust, and which had they been anticipated, would undoubtedly have been provided for where the aid of the court of chancery must be invoked to grant relief imperatively required, and in such cases the court must as far as may be, occupy the place of the party creating the trust and do with the fund what he would have dictated had he anticipated the emergency." Hedges v.Hopper, 118 N.J. Eq. 359; Fidelity Union Trust Co. v. Dignan,105 N.J. Eq. 750; 80 A.L.R. 117; Gluckman v. Roberson, 115 N.J. Eq. 522.
That an emergency exists is beyond question; that we are, and have been, living in an atmosphere of severe and distressing depression for the past five or six years is quite evident, and the court takes judicial notice of the fact. Fornataro v.Atlantic Coast Building and Loan Association, 10 N.J. Mis. R.1248; 163 Atl. Rep. 340.
The testator provided in paragraph 17 of his will that in the event there were not sufficient moneys to pay the legacies, the executor and trustee "shall dispose of my real estate, but not for a period of three years after my decease, if they deem it necessary and proper, and the payment of said bequests herein shall in that event be not payable until six *Page 79 
months after the sale of my said real estate." In this provision, the words "shall dispose" are clearly mandatory; but, then, they are qualified to the extent that the sale may be withheld for a period of "three years after my decease, if they deem itnecessary and proper." It is my opinion that, by this last quoted provision, the limitation of the sale could not be extended beyond the period of three years; otherwise, the three-year period of restriction is useless if it can be said that unlimited discretion is imposed in the executor under the words "if they deem it necessary and proper." The testator evidently intended that the legacies should be paid within a period of three years; he gave the executors power to sell the realty within that period and he made it apparent that their
discretion was not to be carried beyond that time. Therefore, that discretion, with certain limitations, being given to the executors, it would follow that the legacies should carry interest from the end of the limitation, or three years and six months after the testator's death. Where no provision is made for the time of payment of legacies, then the legacies ordinarily bear interest after the end of one year from the testator's death.
The widow is entitled to the entire income of the real estate until such time as the same is actually sold. Joselson v.Joselson, 116 N.J. Eq. 180; Berger v. Burnett, 95 N.J. Eq. 643; Union County Trust Co. v. Gray, 110 N.J. Eq. 270.
The trustee is advised (1) that the defendant, Magdalena Glunz, is entitled to the income from the entire estate of the testator until the sale of the realty; (2) that the action of the complainant in making payments of $100 to the said Magdalena Glunz is approved and confirmed; (3) that the complainant is advised not to sell the realty at the present time unless a price is obtained which would appear to be advantageous to the estate, in which event, the terms will be submitted to the court for approval; and (4) that in the event of sale of the realty the legacies will bear interest from three years and six months after the date of the testator's death. *Page 80