This is a suit brought by complainant, as trustee, praying for construction of a trust indenture and for instructions as to the administration of the trust. The indenture was executed by William O. Allison in 1923 to the Allison Land Company for the benefit of his children and grandchildren. He died in 1924 leaving a will, by the terms of which executors were named. In 1938 the original trustee asked to be relieved of its duties, filed an accounting, which was approved, and complainant was thereupon named as substituted trustee. There is now in possession of complainant some $19,000 in cash, made up of payments of corpus and income receipts of said trust, and in addition there are uninvested items of principal and income which have accrued in the special trusts created under the terms of the fourth provision of the indenture, which reads as follows: *Page 333 
"Fourth: After the death of William O. Allison, should a grandchild or grandchildren of William O. Allison be born, the trustee shall forthwith set aside from the general fund securities aggregating the sum of Ten Thousand ($10,000) dollars (face value), for each grandchild so born. The income derived therefrom shall be accumulated and added to the principal thereof and held by the trustee until the said grandchild reaches the age of sixteen years, after which time One thousand ($1,000) dollars per year shall be paid to said grandchild out of said fund in such sums and at such times as said grandchild requests in writing, and when said grandchild is twenty-one years of age, the balance of the principal and interest, consisting of securities or cash shall be due and payable to said grandchild upon his or her written request. Should any such grandchild or grandchildren die before attaining the age of twenty-one years, the balance of the fund created for his or her benefit, both principal and income, shall be paid to the said grandchild's descendants if any, and if none, it shall be divided among the surviving grandchildren and the descendants of any deceased grandchild of William O. Allison per stirpes and not per capita."
The third provision of the indenture provided:
"Third: The balance of income shall be invested by said trustee in securities approved by William O. Allison, during his lifetime, and after his death, by the Executors and Trustees of his Last Will and Testament, or such other persons or corporations as he may designate in said last Will and Testament, and such investments shall be added to and become a part of thecorpus of the trust fund.
"Upon the death of any of the aforesaid beneficiaries, the income theretofore payable to him or to her shall cease, and such income shall be added to the general fund."
Since the death of William O. Allison, grandchildren have been born, who are now minors, and who are before the court represented by their guardian ad litem. Paragraph fourth has accordingly come into operation for the benefit of each of these grandchildren. The executors of the will of William O. Allison have declined to assume any responsibility by approving investments by the trustee under the provisions of said paragraph third.
The trustee asks a construction of the indenture and instructions as to whether it has any duty regarding the corpus
of the various trust funds requiring it to invest income from time to time; whether it has the duty or even the right to make investments in the absence of approval by the executors, *Page 334 
and whether it has the right to dispose of corpus of the separate trust funds created by paragraph fourth, if necessary to make the annual payment of $1,000 as provided in this paragraph. In my opinion, the answers to all these questions are in the affirmative. The court will, of course, so far as is consonant with the limitations of law, carry out the expressed intentions of the creator of the trust. It clearly appears from the indenture that the grantor intended the trust to be for the benefit of his descendants, by way of providing them with an income. If the provisions of the indenture can be construed so as to carry out this intent, the court will, if possible, give the instrument such a construction. McCracken v. Gulick, 92 N.J. Eq. 214; Woods v. Woods, 102 N.J. Eq. 502; 141 Atl. Rep. 567;Clark v. Commercial Trust Company of New Jersey, 119 N.J. Eq. 133; 181 Atl. Rep. 269. In the McCracken Case, the Court of Errors and Appeals said:
"The fundamental principle is to carry out the intent of the testator. Clearly, when he has created a trust fund and directed that the income be paid to a beneficiary for life, he intends to secure that income to the life tenant."
The trusts created herein are not simple, passive or dry trusts as they have been variously denominated, in which it is the sole duty of the trustee to hold a corpus to be delivered to the beneficiary. The trusts here created are special or active trusts. In the case of Cooper v. Cooper, 36 N.J. Eq. 121, the court says:
"A special trust is where the machinery of a trustee is introduced for the execution of some purpose, particularly pointed out, and the trustee is not, as in a simple trust, a mere passive depositary of the estate but is called upon to exert himself in the execution of the settlor's intention. * * *.
"The trust here is to hold the share and collect the income and appropriate it to the support and maintenance of defendant. The trust is an active one. It involves confidence, discretion and active duties."
It follows from these principles that unless there be some provision of law or some valid restriction in the indenture, *Page 335 
it would be the duty of the trustee to see that the corpus
produce an income for the beneficiaries. It is the duty of the trustee to use reasonable care and skill to make the corpus
productive. That this is a recognized rule is established by theRestatement of the Law, Trusts § 181 and 65 Corp. Jur. 795 ¶672, the principle recognized in New Jersey in Titsworth v.Titsworth, 107 N.J. Eq. 436.
The next question is as to the authority of the trustee to dispose of corpus in order to make annual payments as provided in the fourth paragraph. This power, in my opinion, is necessarily implied from the provision for the making of the payments. It is the clear intention of the testator that the beneficiaries be able to receive, as their request, an annual payment of $1,000 after they respectively should reach a certain age. The size of these particular trusts preclude the possibility of payment of this amount merely from income, and, therefore, the authority to make any deficit out of corpus is necessarily implied. In the case of Girard Trust Co. v. Cheeseman, 93 N.J. Eq. 266,
the court said:
"In this state it has long been an established rule of construction of wills that where from the terms of the entire will it is clear that some duty has been imposed upon an executor or trustee which necessarily carries with it a power of sale in order to enable him to perform the duty, a power of sale will be understood to have been given by implication."
To the same effect is Fidelity Union Trust Co. v. Mintz,125 N.J. Eq. 52, where the court says (at p. 55):
"Where a trust does not expressly give the power of sale, it will be implied from the fact that the trustee is charged with a duty which cannot be performed without the power of sale, and in the present case, the trustee would be unable to carry out the terms of the trust without such right."
The remaining question is as to the right of the trustee to make investments without the approval of the executors as provided in the fourth paragraph, when, as in the instant case, the executors refuse to assume any responsibility for investments. Here, too, the authority will be presumed in order to carry out the obvious intent of the grantor, namely, to provide for his descendants. Surely, the creator did not *Page 336 
contemplate that large sums of money should accumulate and remain completely idle over a long period of years. In the recent case of Morris Community Chest v. Wilentz, 124 N.J. Eq. 580, the court laid down the rule that in its capacity as universal trustee, the court has inherent power, in the preservation of the trust and the protection of the estate, to authorize and direct the trustees to do what, under the terms of the trust and under ordinary circumstances, they would have no power to do. The same effect is Bliss v. Bliss, 126 N.J. Eq. 308. The basis of this ruling is that laid down in Holcomb v. Executors of Holcomb,11 N.J. Eq. 281, in which it was held that an executor or trustee cannot have an authority conferred upon him, which is not in some measure subject to the control of the court. The power of disposal is given by the law, and the execution of it is necessarily submitted to the law, which cannot be set aside by the caprice of the grantor. I accordingly find that the trustee should be instructed to invest any available cash in the trust funds in such securities as are legal investments for trustees.
A decree will be advised in accordance with this opinion.