[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 239 
The issue in this proceeding is the construction placed upon the seventh clause of the decedent's will by the court below. Under this clause, the testator directed the residue of his estate be held in trust and from the income therefrom to pay an annuity of $7,500 per annum to his wife for her life, this annuity having preference over any others mentioned; an annuity of $3,000 per annum to each of his two sons for life and on their death a legacy of $50,000 each to their respective wives and children; that, after the payment of the above annuities and legacies if there be sufficient income left, the following annuities be paid: to his sister, Virginia D. Shay, the income from $50,000 for her life and after her death, the said $50,000 principal to be paid to the children of Virginia D. Shay, namely Grace T. Shay, Nellie Williams and Arthur Shay. Four minor annuities followed, after which it is directed that in event the income of the estate is insufficient to pay all of the annuities, the last three shall be suspended until such time as it is adequate. The testator's wife and sister, Virginia D. *Page 240 
Shay, having died, the court below decided that Mrs. Shay's children were entitled to the payment of the $50,000 upon the death of their mother and not having been paid, the trustees were directed to pay same forthwith. The appeal is taken from this portion of the decree.
The testator's sons contend that decedent's will clearly demonstrates his primary purpose to give preferential consideration to his widow and two sons, in that the income provided for them was to be paid at all events before any other annuities or legacies are paid; that by several references therein as to his wishes in the event of insufficient income, indicated his purpose to protect the three primary annuities and legacies to his widow and children, and that no other payments or annuities or legacies should be made until after the death of those three; that to make payment of the $50,000 Shay legacy now might jeopardize the income directed to be paid to the three primary legatees and thereby defeat the obvious intent of the decedent.
The Shay children contend that the will clearly manifests the testator's intentions to pay the $50,000 legacy to them on the death of their mother; that a scrutiny of the will reveals that testator made a clear distinction between the protection he wished to accord to the annuitants and payment of legacies; that when he spoke of annuities, he coupled it with the phrase "sufficient income" and when he referred to legacies there was no language indicating that they should be paid out of income; that appellants produced no proof to show that, if the $50,000 legacies were paid, the remaining principal of the estate would be insufficient to yield enough income to meet the income of $3,000 given to the two sons, as well as the accumulated income to them that accrued during litigation over proceedings to surcharge the trustees; that the burden of appellants' argument was what might happen if there were not sufficient income, after payment of the $50,000 legacy, but to give effect to that argument would result in writing a different will for testator; that it would envisage a situation which decedent's will did not contemplate and the court could not write in a provision for a situation *Page 241 
that the testator himself never provided for; that the testator's will indicated that he had utmost confidence that there were ample assets in his estate to meet the income to the three primary annuitants and make payment of the Shay legacy without jeopardizing the primary annuitants' income and, if it had not been for the trustees' derelictions in handling the assets of the estate, resulting in a surcharge, no such question would have been raised; that, in fact, there was no evidence to support the happening of any such future event and appellants' argument was based on mere conjecture.
Mr. Justice Heher in National State Bank of Newark v.Stewart, 135 N.J. Eq. 603 (E. A. 1944), has set forth the general rules for construing a will as follows:
"The judicial interpretative function is to find the meaning of the testator as expressed in the language used, considered in the light of the attendant circumstances, and enforce it unless forbidden by positive rules of law or public policy. If the testamentary purpose is exhibited by terms that are clear and unequivocable, there is no room for construction in its general acceptation. In re Fisler, 133 N.J. Eq. 421. The spirit prevails over the letter of the testament. All principles and rules in aid of interpretation yield to the intention revealed by the context. And words are to be given their primary and natural significance unless the context renders it clear that they were employed in a different sense. The prima facie meaning of the terms cannot be rejected in favor of a larger construction without a clear indication of such a purpose. Speculation as to the testamentary intention is not permissible. The judicial authority may not rewrite the will, in whole or in part."
See, also, Christ's Home v. Mattson, 140 N.J. Eq. 433 (E. A. 1947).
A careful reading of the testator's will, and more particularly the pertinent clause, gives expression to the creation of certain priorities in favor of the Dickerson annuities over the Virginia Shay annuity and others, in respect to the income, but the testator has been very careful to abstain from creating any preference with respect to the principal. The courts as a general rule of interpretation are guided by the intent of the testator as expressed in the will itself, holding that a legacy is always preferred where a preference is created by the express terms of the will or where there is a clear implication *Page 242 
that a preference was intended. Byrne v. Byrne, 123 N.J. Eq. 6
(Ch. 1938); affirmed, 124 N.J. Eq. 273 (E. A. 1938).
In the case sub judice, we are satisfied that the testator intended that the gift of principal to the children of Virginia D. Shay should pass to them at the time appointed by him, namely, at the death of their mother, and that the annuitants could look only to the income of the remaining corpus to pay their annuities. The circumstances lending credence to this conclusion are the fact that the testator was careful to specify what annuities should be suspended in event that the income was insufficient to pay all annuities and immediately following this specification, the testator directed that "If my son Woodward Tingle Dickerson shall die leaving him surviving a wife and child or children, then after the death of my wife, I direct my said trustee to pay over to said wife and children of my said son Woodward Tingle Dickerson the principal of this trust fund except the fifty thousand dollars bequeathed to the wife and children of my son E. Stuart Dickerson, except a sum sufficient to produce and pay income enough to pay the other annuities herein provided for, and except the fifty thousand dollars bequeathed to mysister Virginia D. Shay and the annuities to my cousin Ella Dale Holten." (Italics by the court.) There is indication here that the testator comprehended the extend of his estate and gave all the protection and assurance he intended to the primary annuitants. To further extend the protection by withholding the payment of the Shay legacy would be an unwarranted extension of the terms of the will not contemplated by the testator.
There is no proof before the court that the payment of the $50,000 legacy to the Shay children would jeopardize the payment of the Dickerson annuities.
That part of the judgment of the Superior Court, Chancery Division, from which this appeal is taken, is affirmed, with costs. *Page 243