The complainant presents this bill of complaint in its fiduciary capacity as the trustee under the last will and testament of James I. Bumster, who died a resident of Lambertville, Hunterdon County, on December 28th, 1945. *Page 397 
The complainant assumed its duties as testamentary trustee of the decedent's estate on April 10th, 1947, and in the pursuit of its administration it now finds itself in a somewhat perverse and intractable situation by reason of the directions embodied in the testator's will:
"4. All of the rest, remainder and residue of my estate, real, personal and mixed, whatsoever and wheresoever situate, I direct that my Executors hereinafter named, give and convey to The Lambertville National Bank, in trust, however, for the following uses and purposes:
"(a) That my said Executors hereinafter named, shall not sell or convert into money or other securities, any of my said investments, but that my said Executors hereinafter named, shall take my securities, invested as they are now invested at the time of my death, whether or not the same be considered legal for trust funds, and turn over the said securities to The Lambertville National Bank as Trustee. I absolve my Executors, and The Lambertville National Bank as Trustee, for any loss of whatever kind or character sustained by them by retaining these investments.
"(b) I direct my Trustee, The Lambertville National Bank, hereinafter named, to invest in legal trust securities, all moneys accruing from these investments, when these investments shall have been paid upon maturity, or in case payment is made upon them after default."
The bill charges and the proofs render it evident that a relatively large portion of the corpus of the trust is composed of stocks and bonds of a manifestly speculative nature and quality, the market values of which have already declined since the death of the testator. The prognosis concerning them is unfavorable, and the complainant apprehends that unless it is authorized to convert such insecure and precarious assets into investments of a lawfully recognized class, the objects and purposes of the trust may be in part defeated and the interests of the beneficiaries impaired. All of the defendants acknowledge the alleged circumstances and unite with the complainant in its prayer for authority to accomplish the desired transition.
I shall assume that the complainant in quest of the desired authorization invokes not only the inherent power of this court, but also the statutory jurisdiction conferred by R.S. 3:16-17
and 18, N.J.S.A.
Within the original inherent jurisdiction of the Court of Chancery abides its administrative and supervisory jurisdiction *Page 398 
over the management and preservation of trusts. Indeed, this court may authorize and direct trustees to pursue a course or perform acts which they are not permitted to do under the terms of the trust. 2 Scott, Trusts, §§ 167 et seq.; 3 Bogert onTrusts, §§ 562 et seq.; 2 Perry, Trusts (7th ed.), § 764; 1Restatement — Trusts, § 167.
The power, however, is not illimitable. For example, it does not envelop cases where the terms of the trust are created by legislative enactment. Cf. Dodd v. Una, 40 N.J. Eq. 672;5 Atl. Rep. 155.
It is also qualified by the fundamental and salutary principle that in ordinary conditions and circumstances the trustee is obliged to respect and comply with the terms of the trust. It is not the province of this court arbitrarily to thwart the expressed will of the creator of a trust and thereby to allow trustees experimentally to adventure and speculate in lively securities in expectation of either increased income or accretion of principal. Nor has the court in ordinary circumstances the right to clear the way for the substitution of its preferences to those of the settlor of the trust concerning the mode of investing. Hence, the inherent power of this court in which the complainant is presently interested may be legitimately described as a power which may only be exercised in situations of emergency and reasonable necessity, and then only for the preservation of the trust estate and the protection of the cestuis. Oliver v.Oliver, 3 N.J. Eq. 368; Quick's Ex'rs v. Fisher, 9 N.J. Eq. 802; Newark Savings Institution Case, 28 N.J. Eq. 552; FidelityCo. v. United Cos., 36 N.J. Eq. 405; Lister v. Weeks, 61 N.J. Eq. 623; 47 Atl. Rep. 1132; Pennington v. Metropolitan Museumof Art, 65 N.J. Eq. 11; 55 Atl. Rep. 468; MacKenzie v. Trusteesof Presbytery of Jersey City, 67 N.J. Eq. 652, 676;61 Atl. Rep. 1027; Price v. Long, 87 N.J. Eq. 578; 101 Atl. Rep. 195; NewJersey National Bank, c., Co. v. Lincoln, c., Co., 105 N.J. Eq. 557; 148 Atl. Rep. 713; Fidelity, c., Co. v. Shanley, c.,Co., 113 N.J. Eq. 562; 167 Atl. Rep. 865; Hedges v. Hopper,118 N.J. Eq. 359; 179 Atl. Rep. 261; Trust Company of New Jersey v.Glunz, 119 N.J. Eq. 73; 181 Atl. Rep. 27; modified,121 N.J. Eq. *Page 399 593; 191 Atl. Rep. 795; Hughes v. Federal Trust Co., 119 N.J. Eq. 502; 183 Atl. Rep. 299; Simon v. Reilly, 126 N.J. Eq. 546;10 Atl. Rep. 2d 474. This power, similarly restricted in its exercise, is recognized by the courts of equity in England.In re New, L.R. 1901, Ch. Div. 534; In re Tollemache, L.R. 1903,Ch. Div. 955.
Whether the requested authority should be conferred upon the trustee naturally depends upon the conditions exhibited by the application in the particular case. It is observed that in most instances the emergency has arisen from a change of circumstances probably unanticipated by the settlor of the trust. Typical is the situation presented to this court in Price v. Long,supra, in which the trustee was permitted to sell shares of corporate stock which he was directed to retain where it appeared that the business of manufacturing cheap jewelry in which the corporation was engaged had become highly speculative owing to the war, and in Stout v. Stout, 192 Ky. 504;233 S.W. Rep. 1057, where the testator devised a factory for the manufacture of whiskey barrels and directed the trustee to continue the business. Alas, the National Prohibition Act was enacted.
In all of such cases the basic object of the court is to prevent the failure or material impairment of the primary and rudimentary purpose for which the settlor created the trust. Although the settlor has expressly forbidden the course of action sought to be pursued, the judicial theory is that he would not have forbidden it but on the contrary would have authorized it, had he envisioned the eventual circumstances.
In many states the inherent equity power has been broadened by statutes. So, in England: The Trustees Act, 1925, 15 Geo. V. c.19 § 57. I am not convinced that our statute (R.S. 3:16-17,N.J.S.A.), as interpreted by our courts, has substantially enlarged the original jurisdiction of this court. The statute does not enable this court to exercise the power solely upon the basis of economics and in the absence of any emergency or reasonable necessity. Vide, Morris Community Chest v. Wilentz,124 N.J. Eq. 580; 3 Atl. Rep. 2d 808; Bliss v. Bliss,126 N.J. Eq. 308; 8 Atl. Rep. 2d 705; affirmed, 127 N.J. Eq. 20; 11 Atl. *Page 400 Rep. 2d 13; Reiner v. Fidelity Union Trust Co., 127 N.J. Eq. 377; 13 Atl. Rep. 2d 291.
It is therefore in the light of the foregoing authorities that I have measured the evidence received in the present cause.
The testator bestowed the income of the trust upon his cousin and a friend during their respective lives, and upon the death of the survivor of them he directed that the trust be continued and the income paid to the Catholic Church of St. John the Evangelist, Lambertville, New Jersey, in perpetuity.
Were the testator now alive, he would learn that the value of the assets of the trust has declined approximately 19 per centum since the date of his death; that 77 per centum of the stocks and bonds (exclusive of the government securities) comprising the major portion of the corpus are rated as of February 26th, 1948, as speculative holdings, the income from which is, in general, likely to be unstable and irregular, and that only a very few of them are recognized as legally designated investments for trust funds. The evidence reveals other relevant factors which I need not here detail.
There are, however, two features of the cause which I do not ignore. All of the parties in interest implore the court to aid them in the reconstruction of the principal of the trust and, secondly, the trustee in the present application desires to dispose of highly speculative securities and place the proceeds in investments approved and sanctioned by law. The prayer of the bill has a sentient overture.
I conclude that the objects and purposes of the trust have already been defeated in part and will in reasonable probability be substantially defeated and the interests of the beneficiaries will be jeopardized and impaired if the trustee is not permitted to deviate from the instructions of the testator.
A decree will be advised authorizing the complainant-trustee in the exercise of its discretion to sell any or all of the stocks, bonds, and securities specifically designated in Schedule B attached to the bill of complaint, except the United States Government bonds, and to re-invest the proceeds in securities in which trust funds may be invested under the authority of our statutory law. *Page 401