19 N.J. Super. 175 (1952)
88 A.2d 229
THE NATIONAL NEWARK AND ESSEX BANKING COMPANY OF NEWARK, TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF NELLIE BOND OSBORNE, DECEASED, PLAINTIFF-APPELLANT,
v.
VERA GRACE OSBORNE, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 31, 1952.
Decided April 25, 1952.
*178 Before Judges EASTWOOD, BIGELOW and FRANCIS.
Mr. Philip Goodell argued the cause for the plaintiff-appellant (Messrs. Goodell and Allcorn, attorneys).
No appearance for respondent.
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
The plaintiff, The National Newark and Essex Banking Company of Newark, substituted trustee under the last will and testament of Nellie Bond Osborne, deceased (hereinafter referred to as "the trustee"), appeals from the judgment of the Chancery Division, denying its application to reinvest the corpus of the trust estate created by the testatrix. The trial judge held that the objects of the trust would not be defeated by adhering to the restrictions enjoined upon the trustee to invest in securities legal for trustees "at the time of my death."
The testatrix, a widow, died on January 28, 1922, and was survived by a daughter-in-law, Vera Grace Osborne, widow of Harold B. Osborne, testatrix' deceased son, and a *179 daughter, Mary Bailey Osborne (now Mary Bailey Waite). Mrs. Waite is the mother of two minor children, Pamela Osborne Waite and Charles M. Waite, Jr., (approximately 3 and 2 years of age), for whom their father, Charles M. Waite, is guardian ad litem.
Under decedent's will, a trust was created out of the residuary estate with directions to the trustee to pay one-half of the net income therefrom, but not exceeding the sum of $250 per month (increased to $400 per month under the codicil), to testatrix' daughter-in-law, Vera Grace Osborne, so long as she lived and remained the widow of the son, Harold B. Osborne, and the balance of the income or any portion thereof as might be necessary to be used for the "comfort, support and education" of Mary Bailey Osborne, testatrix' granddaughter, during her minority, and any unexpended balance of income was to be added to principal. When Mary Bailey Osborne attained the age of 21 years, she was to receive her entire share of the income of the trust for and during the term of her life. Upon the death of Mary Bailey Osborne, and if Vera Grace Osborne had theretofore remarried or died, the trust is to terminate and the principal and accumulated income is to be divided equally between the surviving children and issue of any deceased children of Mary Bailey Osborne, per stirpes. If Vera Grace Osborne has not died nor remarried, only one-half of the corpus is to be distributed to the aforementioned remaindermen and the remaining one-half is to be distributed on the remarriage or death of Vera Grace Osborne. In the event that Mary Bailey Osborne dies leaving no issue surviving, then upon her death and upon the death or remarriage of Vera Grace Osborne, the corpus and accumulated income is to be divided among several distributees designated by the will. Vera Grace Osborne has not remarried.
The pertinent provision of decedent's will reads as follows:
"1. To convert my said residuary estate, except as the same may be already invested in securities approved by law for trustees, into cash and to invest, re-invest and keep invested the proceeds thereof *180 in securities approved by the laws of the State of New Jersey at the time of my death for trustees. * * *."
The corpus of the estate is approximately the sum of $208,000. The income for the first four-year period of the administration of the trust amounted to $12,150 annually. In succeeding years, by reason of the restricted investments, the yield has been substantially reduced and for the year 1950 approximated the sum of $5,700. Correspondingly, the share of income of the two life tenants has been reduced from the maximum of $400 per month to the current sum of approximately $265 per month. The trustee seeks authority to reinvest the corpus of the trust fund in securities that are now and may from time to time be statutorily designated as legal securities for fiduciaries. It contends that the limitation upon the trust investments to those approved by the laws of the State of New Jersey at the time of the testatrix' death has imposed and continues to impose greater limitations upon the trustee and hardship upon the life tenants, as well as danger to the corpus. The guardian ad litem of the infant remaindermen filed only a formal answer and did not participate in the hearing or on the argument of the appeal.
Mrs. Osborne, daughter-in-law of the testatrix, testified that she has no income other than that received from this trust fund; that she owns her own home in Glen Ridge, this State, on which there is a mortgage; that with the reduced income that she is now receiving, she has not been able to properly maintain herself over the past few years, stating "I have cut myself down to two meals a day to economize and never have any meat nor dessert"; that, when it is necessary to make repairs around the house, it becomes necessary for her to borrow money and to repay same with interest; that she has no savings or reserves out of which she can pay for medical expenses; that it became necessary for her to dismiss her "cleaning woman" who did "the heavy house work" once a week; and that, in addition, she must pay an increased federal income tax.
*181 F. Justin Weber, plaintiff's trust officer, testified concerning the investments comprising the corpus of the trust and the income yield of each; also, as to the investment possibilities under present day statutory classification of "legal investments" and the comparable income yield of each. He stated that, if the requested relief were granted, it would permit a greater diversification in types of investments and thereby enhance the security of the principal and yield a greater income for the benefit of the life tenants.
Unquestionably, if the facts warrant, the Chancery Division is possessed of the necessary power to grant the relief sought. R.S. 3:16-17 and R.S. 3:16-18, as amended by L. 1951, c. 345, N.J.S. 3A:15-15. Lambertville National Bank v. Bumster, 141 N.J. Eq. 396 (Ch. 1948). The trustee argues that since decedent's death, conditions have changed and that other changes are reasonably foreseeable; that one of the objects of the trust, viz., an adequate income for the life tenants, has been, in part, defeated and may in the future continue to be defeated by the restrictive investments under the limitation of the decedent's will; and that the principal of the trust fund is jeopardized by the narrow scope of investments allowed under the language of the will.
Preliminarily, we feel constrained to observe that it is unfortunate and perhaps remiss of the guardian of the two infant remaindermen, who may ultimately receive the corpus of the trust estate, not to have actively participated in their behalf before the trial court or on the appeal. It may well be that the position of the minor remaindermen is contrary to that of the plaintiff and the life tenants. Therefore, their interests in preserving the corpus of the estate should have impelled the guardian to protect his wards' interests by participation in the hearing.
The statutes in effect at the time of the death of the testatrix limited investments by fiduciaries to three classes of securities, viz.: (1) governmental obligations, including obligations of the United States, the State of New Jersey, other states of the United States, and certain political subdivisions *182 and agencies of New Jersey and other states; (2) first mortgage bonds of any railroad company which had paid dividends of not less than four per cent per annum regularly on its entire capital stock for a period of not less than five years preceding the date of purchase; and (3) first mortgage bonds on real estate situated in New Jersey, to an amount not exceeding 60 per cent of the value of such real estate. L. 1898, c. 234, sec. 137, as amended and supplemented by L. 1902, c. 240, sec. 1; L. 1907, c. 146, sec. 1; L. 1903, c. 146, sec. 1, as amended and supplemented by L. 1913, c. 247, sec. 1 and L. 1906, c. 195, sec. 33. Since 1922, the statutes relating to legal investments for fiduciaries have been broadened both as to the number and nature of the classes of investments. (R.S. 3:16-1 to 3:16-10.7; L. 1951, c. 47; N.J.S. 3A:15-1).
N.J.S. 3A:15-15 (a) and (b), pertinent to this issue, provide:
"In all cases where by reason of a change in conditions which occurs, or which may be reasonably foreseen, the objects of any trust heretofore or hereafter created by will or other instrument, or by order of court, might be defeated in whole or in part by the investment or continuance of the investment of all the funds of such trust in the kinds of securities to which the trustee is or shall be limited by the statutes of this state or by the instrument or court order creating such trust, any trustee or beneficiary of such trust may institute an action in the superior court to secure authority permitting or directing the trustee or trustees of such trust to invest all or a part of the funds thereof in other kinds of investments.
If the court shall find that by reason of a change in conditions which occurs since the creation of such trust or which may be reasonably foreseen, the objects of the trust might be defeated in whole or in part by the investment, or continuance of the investment, of all the funds of such trust in the kinds of investments to which the trustee is then limited by the statutes of this state or by the instrument or court order creating such trust and that the objects of the trust and the interests of all the beneficiaries thereof, whether vested or contingent, would be promoted by the investment of all, or some part, of the trust funds otherwise, the court shall by its order or judgment, notwithstanding that the trust so created may be in default in respect to the terms of the instrument creating such trust, authorize or direct the trustee of such trust to invest the whole, or such part thereof as it shall designate, in any class of investments, including common or preferred stocks of corporations of this state or *183 of any other state or country, which in its judgment will promote the objects of the trust and the interests of all the beneficiaries thereof. However the court shall not authorize or direct the purchase of any class of common or preferred stock of any corporation unless the corporation shall have been organized and engaged in the conduct of its business for 5 calendar years immediately preceding the purchase of the stock of the corporation."
Under ordinary circumstances and conditions, the trustee must respect and comply with the terms of the trust. A court may not arbitrarily ignore the expressed will of the creator of the trust merely to permit the trustee to speculate in such securities as may increase income or bring about accretion of the principal. The power of the court should only be exercised where emergencies and reasonable necessity may dictate, "and then only for the preservation of the trust estate and the protection of the cestuis." Lambertville National Bank v. Bumster, supra. "In all of such cases the basic object of the court is to prevent the failure or material impairment of the primary and rudimentary purpose for which the settlor created the trust. Although the settlor has expressly forbidden the course of action sought to be pursued, the judicial theory is that he would not have forbidden it but on the contrary would have authorized it, had he envisioned the eventual circumstances." Lambertville National Bank v. Bumster, supra. Cf. First National Bank of Jersey City v. Stevens, 9 N.J. Super. 324, 327 (Ch. Div. 1950).
In the matter sub judice, while the testatrix, by specific and unequivocal language, indicated that her primary concern was to preserve and protect the corpus of the trust estate created by her, a careful reading of the will demonstrates that she was equally concerned about providing sufficient income for her daughter-in-law, Vera Grace Osborne  and probably her granddaughter, Mary Bailey Waite, in the event of her failure to marry  so that Mrs. Osborne might always live in comfortable circumstances. This is indicated by the fact that while in her will she limited the maximum amount of income to be paid to Mrs. Osborne to the sum of $250 per *184 month, under her codicil, she increased this sum to $400 per month. At the time of testatrix' death, an income of $400 per month was sufficiently large to have maintained one in quite comfortable circumstances, and it is reasonable to infer from the provisions of the will that the testatrix desired to maintain Mrs. Osborne in the same comfortable manner in subsequent years. We doubt very much whether the testatrix foresaw or could have foreseen the economic changes that have since occurred, to wit, that the yield from investments at the time she made her will would, as the result of economic forces, be cut in half and that the cost of living would be approximately doubled. The testatrix evidently believed that the corpus of the trust estate created by her would always yield more than the amount necessary to provide for the maximum amounts of income to be paid to each of the life tenants. This seems to be supported by the fact that at that time the total income from the trust estate was over $12,000, and the amount necessary to meet the payments to the life tenants was only $9,600. As further evidence of the conclusion that the testatrix was confident that the yield from the trust estate would always be more than ample, she directed that "any balance of income unexpended, * * * be from time to time added to the principal of the estate." A further indication of the testatrix' assurance that the corpus of the estate would always yield the then existing return, appears in her codicil where she directs that there be invested from each of the shares a sufficient sum, at least $2,500 in the aggregate, to pay the income of $10 a month to Emma Julie Osborne for the balance of her natural life.
Our review of the cases in which the court has directed a change of investment under the foregoing authority, reveals no case in which such clear and unequivocal limitation is placed upon the fiduciary's field of investment. The investment of trust funds by a trustee is an administrative function subject to control by the trust instrument, and in the absence of lawful direction therein, is regulated by statute or court decisions pertaining thereto. Reiner v. Fidelity *185 Union Trust Co., 126 N.J. Eq. 78 (Ch. 1939), reversed on other grounds, 127 N.J. Eq. 377 (E. & A. 1940). Cf. Bankers Trust Co. v. Bacot, 6 N.J. 426 (1951). "The settlor's directions or authorizations about trust investments, override any statutory or court rules about trust investments, unless such rules provide that the settlor is not to have that power." Bogert, Trust and Estates, sec. 681, p. 370; New Jersey National Bank and Trust Co. v. Lincoln Mtg. & Title Guaranty Co., 105 N.J. Eq. 557 (Ch. 1930). It is evident, that while the Legislature has, under the established circumstances, authorized such relief as is sought here, it has nevertheless placed emphasis upon the testator's right to control the investment of his funds. See N.J.S. 3A:15-1 (v); 3A:15-17; 3A:15-25.
The trustee has established by the testimony that there has been a severe reduction in the income derived from the corpus of the trust since its creation. That a serious economic change in living conditions has also occurred is a matter of such common knowledge, the court may take judicial notice thereof. As a consequence thereof, we incline to the view that the deprivation to Vera Grace Osborne of certain necessities and comforts of life which the testatrix evidently intended that she should enjoy tends to defeat one of the specific objects of her will. It will be noted from a careful examination of N.J.S. 3A:15-15(b), that it specifically provides, in part, that such relief may be granted if it appears "that the objects of the trust and the interests of all the beneficiaries thereof, whether vested or contingent, would be promoted by the investment of all, or some part, of the trust funds otherwise * * *." The difficulty here is that the trial court did not have before it sufficient evidence to determine what investments should be disposed of and the class of investments in which reinvestment should be made. The court attempted, unsuccessfully, to elicit from the trust officer the particular securities in which it proposed to reinvest the trust funds. He testified that it would be impossible for him to state with particularity the securities *186 proposed, because that decision lay with the investment committee or the board of directors of the bank. His testimony was limited to general classifications of available securities for reinvestment. We think that the legislative intendment as gathered from N.J.S. 3A:15-15(b), clearly requires that such an application should indicate to the court: (a) whether the whole or part of the corpus should be reinvested; (b) the specific class or classes of securities in which such reinvestments shall be made; and (c) that testimony be proffered in support of such recommendations, so that the court may intelligently pass upon the merits of the application and determine whether the proofs bring the relief sought within the pertinent provisions of the statute. Such a procedure seems to have been pursued in the cases cited by plaintiff. For instance, in the case of Morris Community Chest v. Wilentz, 124 N.J. Eq. 580, 582 (Ch. 1939), to secure increased income for the furtherance of the charitable purposes of the trust and to preserve the principal, the court limited the reinvesments to one-third thereof in common stocks. In Reiner v. Fidelity Union Trust Co., 126 N.J. Eq. 78 (Ch. 1939); reversed, 127 N.J. Eq. 377 (E. & A. 1940), the bill of complaint sought an order from the court directing the trustee to invest not in excess of 20 per cent of the fund in common stocks. In Bliss v. Bliss, 126 N.J. Eq. 308 (Ch. 1939), affirmed 127 N.J. Eq. 20 (E. & A. 1940), the complaint prayed for permission to invest a portion of the fund in common or preferred stocks. In the case of First National Bank of Jersey City v. Stevens, supra, the relief sought was to permit the trustee to invest a portion of the corpus in common stocks. In Lambertville National Bank v. Bumster, supra, the court permitted the trustee to reinvest in statutory legals except as to the government bonds.
It is also essential that the interests of the minor remaindermen be actively represented to the end that the question of the preservation and protection of the corpus be presented to the trial court. To accomplish this, it may become necessary to displace the present guardian ad litem *187 and appoint one who is concerned solely with the interests of the remaindermen.
The matter is accordingly remanded to the Chancery Division to take such additional testimony as it may deem essential to give effect to this decision and to make such new determination as it may deem necessary.